NOTICE: This entry order is subject to formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

## ENTRY ORDER

2026 VT 35

SUPREME COURT CASE NO. 26-AP-081

JULY TERM, 2027

| | | |
|---|---|---|
| In re Eva Vekos, Esq.<br>(Office of Disciplinary Counsel*) | } | Original Jurisdiction |
| | } | |
| | } | Professional Responsibility Board |
| | } | |
| | } | CASE NO. PRB-097-2024 |

In the above-entitled cause, the Clerk will enter:

¶ 1.     Respondent seeks automatic reinstatement of her license to practice law under Administrative Order 9, Rule 21(F).  For the reasons set forth below, we deny her request.

¶ 2.     The record indicates the following.  In December 2025, respondent pled nolo contendere to driving under the influence of alcohol (DUI) in violation of 23 V.S.A. § 1201(a)(2). Over the State's objection, she received a deferred and probationary custodial term of six months. See generally 13 V.S.A. § 7041.  This Court suspended respondent's license to practice law on an immediate interim basis, concluding that she had been convicted of a "crime that reflects adversely on [her] . . . fitness as a lawyer."  A.O. 9, Rule 21(C), (D); In re Vekos, 2026 VT 11, ¶ 20, __ Vt. __, __ A.3d __.   As we explained there, an interim suspension under these circumstances "protect[s] the profession and the administration of justice from the specter created where an individual found guilty of a 'serious crime' continues to serve as an officer of the court in good standing."  Vekos, 2026 VT 11, ¶ 3 (quotation omitted); see also ABA Model Rules for Layer Disciplinary Enforcement, Rule 19, Commentary (explaining that "[c]ontinued practice by a lawyer found guilty of a 'serious crime' undermines the public confidence in the profession and the administration of justice").  Disciplinary counsel subsequently filed a formal disciplinary complaint against respondent.

¶ 3.     In June 2026, respondent fulfilled the conditions of probation associated with her deferred sentence and the trial court "str[uck] the adjudication of guilt" pursuant to 13 V.S.A. § 7041(e).  Respondent then filed the motion at issue here, requesting relief under A.O. 9, Rule 21(F).

¶ 4.     Rule 21(F) is entitled "Automatic Reinstatement from Interim Suspension upon Reversal of Conviction."  It provides:

> If a lawyer suspended solely under the provisions of [Rule 21(D)] demonstrates that the underlying conviction has been reversed or vacated, the order for interim suspension shall be vacated and the lawyer placed on active status. The vacating of the interim suspension will not automatically terminate any formal proceeding then pending against the lawyer, the disposition of which shall be determined by the hearing panel on the basis of the available evidence other than conviction.

¶ 5. Respondent argues that she is entitled to reinstatement because "the adjudication of guilt in [her criminal case] was vacated. Her guilty adjudication was stricken and she was discharged." In support of this assertion, respondent submitted a June 17, 2026 entry order from the trial court in her criminal case. This order states in relevant part that "[respondent] has fulfilled the conditions of probation associated with her deferred sentence" and "[a]ccordingly, pursuant to 13 V.S.A. § 7041(e), the adjudication of guilt is stricken, and she is discharged from probation." The trial court has not yet ruled on whether "the record the criminal proceedings" will be expunged under § 7041(e). See id. (stating that "[e]xcept as provided in [13 V.S.A. § 7041(h) related to certain sex offenses], the record of the criminal proceedings shall be expunged upon the discharge of the respondent from probation, absent a finding of good cause by the court").

¶ 6. Disciplinary Counsel opposes respondent's reinstatement request. He asserts that the trial court did not vacate respondent's conviction and that word does not appear in its ruling. Instead, as directed by statute, the court struck the adjudication of guilt and discharged respondent from probation. See id. ("Upon fulfillment of the terms of probation and of the deferred sentence agreement, the court shall strike the adjudication of guilt and discharge the respondent."). He further asserts that the Legislature and this Court have recognized a distinction between vacating a conviction and striking an adjudication of guilt. He adds that drawing this distinction is consistent with the commonly understood definition of these terms in the context of judicial acts.

¶ 7. We agree with Disciplinary Counsel that respondent fails to show that her "underlying conviction has been reversed or vacated" as required by Rule 21(F). As Disciplinary Counsel notes, the Legislature has not treated these terms synonymously. In 13 V.S.A. § 2658(b), for example, the Legislature allows individuals convicted of qualifying crimes to move to vacate their convictions where the conviction "was obtained as a result of the person having been a victim of human trafficking." In that circumstance, "[i]f the motion is granted, the court shall vacate the conviction, strike the adjudication of guilt, and expunge the record of the criminal proceedings." Id. § 2658(d)(2). The deferred-sentence statute does not contain similar language about vacating convictions. As indicated above, it provides only that "[u]pon fulfillment of the terms of probation and of the deferred sentence agreement, the court shall strike the adjudication of guilt and discharge the respondent" and expunge "the record of the criminal proceedings . . . absent a finding of good cause." Id. § 7041(e). The Legislature has recognized the difference between the terms "strike" and "vacate" in criminal statutes and it did not use the latter word in § 7041(e). Respondent does not persuasively argue otherwise.

¶ 8. These terms are also defined differently in the legal context. "Vacate" means "[t]o nullify or cancel; make void; invalidate." Vacate, Black's Law Dictionary (12th ed. 2024). "Strike" means "[t]o expunge, as from a record." Strike, id.; see also Expunge, id. ("[t]o remove

2

from a record, list, or book; to erase or destroy"). As with the latter definition, this Court has also equated "strike" with "expunge." See State v. Love, 2017 VT 66, ¶ 22, 205 Vt. 222, 172 A.3d 777 (explaining that 13 V.S.A. § 7041(e)'s directive means that "the court would expunge the adjudications of guilt from the record"); State v. Pierce, 163 Vt. 192, 196-97, 657 A.2d 192, 195 (1995) (noting that Section 7041 "offers the defendant an opportunity to have an adjudication of guilt expunged" and it is "more akin to a conditional pardon . . . than to a judicially imposed sentence based on an adjudication of guilt").

¶ 9.    As one court has explained, "a defendant who moves to expunge her conviction does not seek to vacate or set aside her conviction," whereas "[w]hen a court vacates a conviction, it sets aside or nullifies the conviction and its attendant legal disabilities; the court does not necessarily attempt to erase the fact of the conviction." United States v. Crowell, 374 F.3d 790, 792 (9th Cir. 2004). Conversely, "expungement, without more, does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty." Id. (citation omitted); see also G. Blum, Annotation, Judicial Expunction of Criminal Record of Convicted Adult under Statute, 69 A.L.R. 6th 1 (2011) ("A motion to expunge a criminal conviction differs substantially from a motion to vacate or set aside a conviction, for when a defendant moves to expunge records, he or she asks that the court destroy or seal the records of the fact of her conviction and not vacate or set aside the conviction itself.").

¶ 10.    Respondent's conviction was neither reversed nor vacated here. The plain meaning of those terms does not include striking an adjudication of guilt upon completion of a deferred sentence. Automatic reinstatement is appropriate if there is a legal or factual deficiency in the underlying conviction, which is not the case here. The posture of respondent's criminal case does not undermine our previous assessment of the serious nature of respondent's conviction under A.O. 9, Rule 21(C) and (D). This conclusion is consistent with the purposes underlying Rule 21 referenced above, including preserving public confidence in the profession.

¶ 11.    Respondent raises no persuasive argument to the contrary. We rejected above the assertion that striking an adjudication of guilt is equivalent to "revers[ing] or vacat[ing]" a conviction as required by A.O. 9, Rule 21(F). Respondent largely focuses her argument on expungement, which is a question that remains pending before the trial court. The question of expungement is not before this Court, and it is not identified as a basis for automatic restatement in Rule 21(F).

¶ 12.    In reaching our conclusion, we are mindful of "the differing purposes of criminal as opposed to disciplinary proceedings. While the purpose of a criminal prosecution is to punish the wrongdoer, the purpose of a disciplinary proceeding is to determine whether an individual is a proper person to be permitted to practice law." In re Ettinger, 538 N.E.2d 1152, 1160 (Ill. 1989). Because respondent fails to show that she is entitled to automatic reinstatement under A.O. 9, Rule 21(F), her motion is denied.

Respondent's motion for automatic reinstatement under A.O. 9, Rule 21(F) is denied.

¶ 13.    **Nolan, J., concurring**. I agree that respondent cannot satisfy the specific requirements of Administrative Order 9, Rule 21(F) and therefore concur in denying respondent's motion. Nonetheless, I continue to respectfully disagree with the underlying decision to suspend

3

respondent's license to practice law and thus preclude respondent from working in her profession and carrying out her duties as the elected Addison County State's Attorney. See In re Vekos, 2026 VT 11, ¶ 21, __ Vt. __, __ A.3d __ (Nolan, J., dissenting) (explaining that Disciplinary Counsel had failed to show that respondent committed serious crime as is necessary to grant interim suspension).

¶ 14.    Despite the emergent need expressed by Disciplinary Counsel in the request for interim suspension, neither respondent's behavior nor Disciplinary Counsel's actions supported any such exigency. Disciplinary Counsel did not file a petition to suspend respondent's license until March 2026, over two years from the date of respondent's underlying conduct in January 2024, and about three months after she pled nolo contendere to the first-time misdemeanor of driving under the influence and was placed on probation. During the period between her offense and the request for interim suspension, respondent did not reoffend or violate any court condition. Indeed, her present motion is premised on her successful completion of her entire deferred sentence and the terms of her probation. Moreover, Disciplinary Counsel did not file formal disciplinary charges against respondent stemming from her two-and-a-half-year-old criminal offense until after her license was suspended.

¶ 15.    License suspensions and other sanctions imposed under our attorney-regulation system are designed to protect the public from harm and to maintain faith in our legal system. In my assessment, given respondent's lack of recidivism, acceptance of responsibility, and compliance with court orders, sidelining her from practicing law and carrying out her duties as Addison County State's Attorney on an interim basis before a merits hearing does not promote these goals.

BY THE COURT:

Paul L. Reiber, Chief Justice

Harold E. Eaton, Jr., Associate Justice

Nancy J. Waples, Associate Justice

Christina E. Nolan, Associate Justice

Michael P. Drescher, Associate Justice

4